IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

KATRINA DONALDSON, AS NEXT )
FRIEND AND GUARDIAN OF C.J.D., )
A MINOR )
 )
v. ) No. 1:14-0088
 )
MAURY COUNTY BOARD )
OF EDUCATION )

To: The Honorable William J. Haynes, Senior District Judge

# REPORT AND RECOMMENDATION

This matter was referred to the Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72. *See* Order at Docket Entry No. ("DE") 22. Presently pending is Defendant's motion for summary judgment (DE 30), to which Plaintiff has filed a response (DE 39). For the reasons that follow, the undersigned Magistrate Judge recommends that Defendant's motion be GRANTED.

## I. Background

Plaintiff is the natural grandmother and legal guardian of CJD, a minor child who was at the time of the events giving rise to this claim, a sixth grade student at Mount Pleasant Middle School of the Visual and Performing Arts ("MPMS"), which is located in the Maury County School District (the "District"). DE 1 at ¶ 1; DE 40 at ¶ 2. Defendant is a governmental entity that receives federal funds and operates the school system in Maury County, Tennessee, which

1

includes MPMS. DE 1 at ¶ 2; DE 15 at ¶ 2. CJD rode the school bus to MPMS most days during the 2013-14 school year. DE 40 at ¶ 4. On January 28, 2014, Plaintiff's husband, Joe Donaldson, met with the principal of MPMS, Kevin Eady, to discuss an incident on the school bus during which CJD was called a "nigger" (the "n-word") by a minor child identified as "HR," a third-grade student at Mount Pleasant Elementary School ("MPES"). *Id*. at ¶¶ 5, 7.[1] Mr. Eady proceeded to contact the principal of MPES, Larry Brown, to inform him of the incident. *Id*. at ¶ 11. Mr. Brown subsequently conducted an investigation of the incident, which resulted in one MPES student confirming that the incident had taken place. *Id*. at ¶ 12.[2] Mr. Brown also interviewed HR and advised the student that he was disappointed in having to investigate Mr. Donaldson's complaint due to the offensive nature of the "n-word." *Id*. at ¶ 13-14. However, HR denied that he had referred to CJD as the "n-word." *Id*. at ¶ 13. Nevertheless, Mr. Brown instructed HR to sit at the front of the school bus going forward and to "stay away from the older children" on the bus, including CJD. *Id*. at ¶ 15.[3]

On February 10, 2014, another incident occurred on the school bus during which HR again referred to CJD as the "n-word." *Id*. at ¶ 16. Mr. Brown conducted an additional investigation of the incident that was not completed until after he was able to view video footage of the incident on February 17, 2014. *Id*. at ¶ 17. Plaintiff does not dispute that this additional investigation took place, but claims that Mr. Brown made no attempts to contact Plaintiff following the second incident. *Id*. Plaintiff alleges that she attempted to contact Mr. Brown

---

[1] Plaintiff contends that CJD was also kicked by HR. DE 40 at ¶ 5; DE 43 at ¶ 7. Defendant does not appear to dispute that HR kicked CJD, but alleges that "[t]here is no indication that [principal of MPES] Brown was told that CJD was kicked." DE 44 at ¶¶ 1-2.
[2] Defendant alleges that of the two students Mr. Brown interviewed, one confirmed the incident while the other student did not. DE 40 at ¶ 12. Plaintiff disputes this phrasing, noting that the student who could not confirm the incident merely stated that he did not hear the incident. *Id*.
[3] Plaintiff does not appear to dispute this, but adds that staff from MPMS assigned CJD a seat at the front of the school bus, which was in close proximity to HR. *Id*. at ¶ 15.

regarding the incident on multiple occasions, but was unable to reach him until February 24, 2014. *Id*.

Following completion of the additional investigation, Mr. Brown issued a bus conduct report, implemented a bus behavior plan, placed HR on bus probation, discussed the incident with HR's father, and permanently assigned HR to a seat in the front of the school bus. *Id*. at ¶ 18. There were no additional incidents reported that involved HR and CJD, although Plaintiff claims that she made numerous complaints about Defendant's handling of the incidents. *Id*. at ¶ 19. Defendant also contends that Mr. Eady has "periodically followed up with [CJD] and other students to make sure that there were no more issue[s]," but Plaintiff claims that no one from the District contacted her or her husband to provide them with any information regarding Defendant's handling of the incidents. *Id*. at ¶ 20; DE 44 at ¶ 3.

On July 17, 2014, Plaintiff filed a complaint alleging violations of Title VI of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000d, including Defendant's failure to take appropriate action in response to allegations that CJD was the victim of physical assault and use of a racial slur by another student. DE 1 at ¶ 20. Plaintiff claims that Defendant "demonstrated deliberate indifference to the needs of [CJD]" through its "inadequate, hostile and nonresponsive handling" of the aforementioned incidents, and asserts that Defendant has failed to "properly [] train its faculty and staff … so as to prevent these and other similar occurrences from continuing to create racially hostile environments on school buses." *Id*. at ¶¶ 20-22. Because of this failure, Plaintiff alleges CJD has been deprived of his "right to engage in regular school activities," including his right to ride the school bus without racial harassment. DE 39 at 2.

In its motion for summary judgment, Defendant asserts that its handling of the incidents that occurred on January 28 and February 10 of 2014 was appropriate, and that Plaintiff therefore

cannot establish a violation of Title VI for racial discrimination or harassment. Based on the analysis below, the Court agrees and recommends dismissal of Plaintiff's complaint.

**II. Analysis**

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A "genuine issue of material fact" is a fact that, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). When considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875, 121 S. Ct. 179, 148 L. Ed. 2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir.), *cert. denied*, 534 U.S. 896, 122 S. Ct. 217, 151 L. Ed. 2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of

evidence to support the non-moving party's case.'" *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 325). "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003). Additionally, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, in order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support its position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

Title VI prohibits any institution that receives funding from the federal government under any program or activity from discriminating on the basis of race, color, or national origin. *See* 42 U.S.C. § 2000d. Such an institution may not "[r]estrict an individual in any way in the enjoyment of any advantage or privilege enjoyed by others receiving any service, financial aid, or other benefit under the program." 34 C.F.R. § 100.3(b)(iv). Nor may such an institution "[d]eny an individual an opportunity to participate in the program through the provision of services or otherwise or afford him an opportunity to do so which is different from that afforded others under the program[.]" 34 C.F.R. § 100.3(b)(vi). It is undisputed that Defendant is an institution that receives federal funding and is subject to the provisions of Title VI.

A claim of deliberate indifference to student-on-student harassment, such as the one Plaintiff asserts, is actionable under Title VI. *Maislin v. Tennessee State Univ.*, 665 F. Supp. 2d 922, 930 (M.D. Tenn. 2009). To sustain such a claim against an institution, the plaintiff must demonstrate three elements: (1) that the harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school; (2) that the defendant had actual knowledge of the harassment; and (3) that the defendant was deliberately indifferent to the harassment. *Id*. at 931. With respect to the third prong, the plaintiff "may demonstrate defendant's deliberate indifference to discrimination only where the [defendant's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id*. (internal citations and quotations omitted). The Sixth Circuit has discussed the deliberate indifference standard with respect to claims of sexual harassment, which applies analogously to claims of racial harassment:[4]

> The [defendant] is not required to "remedy" sexual harassment nor ensure that students conform their conduct to certain rules, but rather, "the [defendant] must merely respond to known peer harassment in a manner that is not clearly unreasonable" … The deliberate indifference standard "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action" … The standard does not mean that [defendants] must expel every student accused of misconduct … Victims do not have a right to particular remedial demands … Furthermore, courts should not second guess the disciplinary decisions that school administrators make.

*Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000) (internal citations omitted). Notably, the Supreme Court has indicated that the standard is "not a mere reasonableness standard that transforms every school disciplinary decision into a jury question."

---

[4] *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787, n.1, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998) ("Although racial and sexual harassment will often take different forms, and standards may not be entirely interchangeable, we think there is good sense in seeking generally to harmonize the standards of what amounts to actionable harassment."); *See also Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999) ("[T]he same principles that govern sexual harassment also govern claims of racial harassment[.]").

*Id.* (citing *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 649, 119 S. Ct. 1661, 1674, 143 L. Ed. 2d 839 (1999)). Contrary to Plaintiff's claim otherwise, the Supreme Court has stated that "there is no reason why courts, on a motion … for summary judgment … could not identify a response as not 'clearly unreasonable' as a matter of law." *Id.*

Plaintiff notes in her response that the parties dispute numerous facts pertaining to the two incidents at issue in this case. However, even viewing the evidence in the light most favorable to Plaintiff, the Court finds no genuine issues of material fact that might lead a reasonable jury to return a verdict that is favorable to Plaintiff. The parties disagree over some of the details of the incidents at issue, but it is not disputed that following the first incident on January 28, 2014, Defendant issued a verbal reprimand of the MPES student that used the racial slur towards CJD (DE 32 at 6; DE 40 at ¶ 14-15), and that following the second incident on February 10, 2014, Defendant issued a written reprimand in the form of a Bus Conduct Report,[5] placed the offending student on probation, discussed the matter with the student's father, and permanently assigned the student to a seat in the front of the bus. DE 40 at ¶ 18. It is further undisputed that CJD continued to ride the school bus and that there were no further issues between the student and CJD reported. DE 40 at ¶¶ 4, 19.[6] The Court also notes that Defendant took such action even though the MPES student denied ever using the racial slur. DE 40 at ¶ 13; DE 32 at 6-7.

The Supreme Court has considered the question of whether and under what circumstances a plaintiff may bring a private damages action against a school board in cases involving student-on-student harassment:

---

[5] This document is attached to the Declaration of Larry W. Brown. *See* DE 33-1 at 2.
[6] As previously discussed, Plaintiff claims that she made numerous subsequent complaints regarding Defendant's handling of the incidents, but does not dispute that there were no further incidents involving the offending student and CJD.

> We conclude that it may, but only where the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities. Moreover, we conclude that such an action will lie only for harassment that is so *severe, pervasive, and objectively offensive* that it effectively bars the victim's access to an educational opportunity or benefit.

*Davis*, 526 U.S. at 649 (emphasis added). The Court does not dispute Plaintiff's contention that the use of the "n-word" is "profoundly offensive and hostile" (DE 39 at 8), nor does Defendant appear to deny that this racial epithet is "objectively offensive." DE 32 at 10-11. This does not, however, lead the Court to the conclusion that the use of this term by a single third-grade student on two occasions was so severe and pervasive that it precluded CJD's access to an education opportunity by creating a racially hostile environment, as Plaintiff alleges.

Plaintiff points to language from three cases in support of her position, none of which convince the Court that her claim should survive the instant motion for summary judgment. Plaintiff relies on the First Circuit's statement that "[w]e do not hold that a one-time episode is *per se* incapable of sustaining a hostile environment claim." *Brown v. Hot, Sexy & Safer Prods., Inc.*, 68 F.3d 525, 541, n.13 (1st Cir. 1995). But this statement does not suggest that two episodes involving use of a racial slur are automatically sufficient to sustain a hostile environment claim; it simply holds that it is not impossible to have an actionable hostile environment claim based on a single episode of harassment. Indeed, the very footnote referenced by Plaintiff states that the frequency of any alleged harassment is "one of many [factors] to be considered in determining whether the conduct was 'sufficiently severe or pervasive' that a reasonable person would find that it had rendered the environment hostile or abusive." *Id*.

Plaintiff additionally cites the Supreme Court's holding that the test of whether an environment is perceived as hostile or abusive "is not, and by its nature cannot be, a mathematically precise test," and that such a determination is made "only by looking at all the

circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22-23, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295 (1993).[7] Plaintiff also references the Second Circuit's statement that use of the "n-word" raises a question of severe harassment that goes beyond simple teasing. *See DiStiso v. Cook*, 691 F.3d 226, 242-43 (2d Cir. 2012). The Court reiterates that it does not dispute the offensiveness of the racial slur in question, but cannot agree with Plaintiff's suggestion that the use of the slur by a single student on two occasions over the course of thirteen days was so severe and pervasive that it prevented CJD from access to an educational benefit. In contrast, the kindergarten child who was the subject of repeated harassment in *DiSitio* was called the "n-word" between eight and fifteen times in a single school year. *Id*. at 243. Abusive classmates referred to the child as "blackie" and suggested that his skin remained dirty even after washing. *Id*. at 242. The child was also allegedly the subject of pinching, biting, spitting, kicking, punching, hitting, and throwing of juice boxes. *Id*. at 232. Plaintiff's allegations simply do not begin to approach this type of rampant abuse. In fact, it is undisputed that the other students on the bus were attempting to stop the harassment of CJD. DE 40 at ¶ 8.

In light of Plaintiff's reliance on the *DiStiso* case, the Court highlights the Second Circuit's discussion of the use of the "n-word" in a school setting, quoted in part by Plaintiff, which is relevant to the Court's analysis:

> [I]n the school context, a teacher's indifference to children's use of this particular epithet to belittle a child may well be found to have caused the sort of educational deprivation referenced in *Davis,* particularly if its use was "*sufficiently continuous and concerted … to be deemed pervasive.*" *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir.2002) (internal quotation mark omitted) (stating with respect to Title VII claims of sex discrimination that *isolated acts, unless very serious, generally do not meet threshold of severity or pervasiveness*).

---

[7] The Supreme Court discussed this standard in the context of an employee's workplace. *Harris*, 510 U.S. at 22-23.

*Id*. at 243 (emphasis added). The Court does not believe that a reasonable jury could find that a single student's use of the racial slur on two occasions is the type of continuous and concerted behavior that is "pervasive" for purposes of sustaining a student-on-student harassment claim under Title VI. While the offending student clearly intended to denigrate CJD, there is no indication that this harassment occurred on dates other than the two alleged. *Cf. Leffler ex rel. Leffler v. Memphis City Sch. Bd. of Educ.*, No. 04-2141, 2005 WL 2008234 (W.D. Tenn. Aug. 22, 2005) (finding that one vulgar statement and two instances of offensive touching of female student by one male student over two-week period was not sufficiently severe or pervasive to amount to violation of Title IX). In fact, the evidence reflects that the harassment ceased after the February 10, 2014 incident. DE 40 at ¶ 19.

Plaintiff provides no case law to support her contention that the use of this undeniably offensive term by a third-grader on two isolated occasions rises to the level of severity required to sustain a Title VI action. The Court is unaware of any case in which similar conduct has been deemed to meet the severe, pervasive, and objectively offensive threshold. *Cf. Cleveland v. Blount Cty. Sch. Dist. 00050*, No. 3:05-cv-380, 2008 WL 250403 (E.D. Tenn. Jan. 28, 2008) (finding that racially-offensive graffiti, "hit lists" consisting of names of African-American students, and threats of gun violence aimed at African-American students constituted severe, pervasive, and objectively offensive behavior). Accordingly, the Court finds that Plaintiff cannot establish that HR's actions were sufficiently severe and pervasive to prevent CJD from enjoying an education opportunity or benefit and thus cannot meet the first prong of the deliberate indifference test. The Court does not condone this type of behavior nor finds that it is to be taken lightly. Rather, the Court merely concludes that HR's conduct, although offensive, does not rise

to the level of being actionable under Title VI. Defendant's motion for summary judgment must therefore be granted.[8]

### III. Recommendation

Based on the foregoing, the Magistrate Judge recommends that Defendant's motion for summary judgment (DE 30) be GRANTED.

Any party has fourteen (14) days from receipt of the Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 47 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

BARBARA D. HOLMES
United States Magistrate Judge

---

[8] Because the Court has concluded that Plaintiff cannot establish the first requisite element as a matter of law, the outcome does not depend on the extent to which, if any, Plaintiff can establish the second or third elements of a Title VI claim of deliberate indifference. The Court does note however that there is no dispute that Defendant had actual knowledge of the racial slurs. With respect to the third element, apparently the measures taken by Defendant were effective, as there is no indication that the offensive conduct continued after implementation of a bus behavior plan. While the manner in which Plaintiff was personally treated by Defendant was less than impressive, the Court is not convinced that Defendant's response in addressing HR's conduct was clearly unreasonable under the circumstances, and therefore the actions do not amount to deliberate indifference. *See Davis*, 526 U.S. at 649.